defendants Freeman, Monsheimer, Waller, and Goldsmith, the action has been finally determined, and therefore there is no reason why the receiver should not account and be discharged. The fact that the defendant Tobias has interposed a counterclaim against the plaintiff is of no importance so far as the question here presented is concerned. He does not claim anything against the other defendants, and, if he did, his claim would be unavailing, because he did not serve a copy of his answer upon them prior to the determination of the demurrers and the entry of the judgment thereon. Besides, the relief which he asks is not against the defendants, but against the plaintiff for depriving him of the benefit of the contract to sell the plant and receive the proceeds after deducting the costs and expenses of the sale in excess of $4,500. According to the record on appeal, such proceeds will not exceed $4,500. Therefore, Tobias, under his agreement, has no interest in the fund, and the claim which he has, if any, is reduced solely to the one against the plaintiff for destroying his contract. The fact that he has this claim, or has interposed a counterclaim to enforce it, is no reason why the other parties should be deprived of property to which they are justly entitled. This being so, the receiver should account and pay over the moneys held by him to the parties entitled thereto.

The order appealed from, therefore, should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs, to the extent of directing the receiver to account for his acts and proceedings as such, and pay over the moneys held by him, after deducting his fees and the expenses of the receivership, to the persons legally entitled thereto. All concur.

---

### PAVENSTEDT v. NEW YORK LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. BILLS AND NOTES—ACTION—DAMAGES FOR DISHONOR.

Where the payee of a draft payable in New York, but drawn in a foreign country, negotiated it to a broker there, receiving the irredeemable paper currency of that country, and the draft was dishonored, whereby the payee on reimbursing the broker suffered a loss owing to the depreciation of the local currency, the fluctuation was not to be considered in computing re-exchange.

2. SAME—RE-EXCHANGE.

Laws 1897, p. 743, c. 612, § 200, provides that a negotiable instrument is discharged by payment in due course by or on behalf of the principal debtor, or by any other act which will discharge a simple contract for the payment of money. A New York corporation gave in a foreign country a draft on itself payable in New York. The payee negotiated it to a local broker, and it was dishonored, whereupon the payee, who had reimbursed the broker, sued on the draft in New York, and was paid the face of the draft, interest, and protest fees. *Held*, that he was not entitled to recover re-exchange.

Clarke and Houghton, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Adolph Pavenstedt against the New York Life Insurance Company. From a judgment overruling a demurrer to the complaint,

defendant appeals. Reversed, with leave to plaintiff to amend the complaint.

See 92 N. Y. Supp. 853.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

James H. McIntosh, for appellant.

Robert E. L. Lewis, for respondent.

INGRAHAM, J. The complaint alleges that the defendant, a domestic corporation, on the 22d day of May, 1902, at the city of Bucaramanga, in the United States of Colombia, by its agents made and delivered to one Gonzalez its certain negotiable bill of exchange in writing, dated at Curacao the 10th day of August, 1901, and directed to itself in New York, wherein and whereby it required itself to pay in New York to the order of the said Gonzalez the sum of $4,181.60 three days after sight; that said Gonzalez indorsed, negotiated, sold, and delivered said bill of exchange to a firm of brokers at the city of Bucaramanga, and received in consideration of said negotiation and sale of said draft $234,169.60 in the money of the United States of Colombia, one dollar of the United States of America being then worth $56 of the money of the United States of Colombia; that the said draft was duly forwarded to the agents of the transferees in New York, and was on the 17th day of April, 1902, presented to the defendant for acceptance, which was refused, and the same was duly protested for nonacceptance; that subsequently, on July 21, 1902, the said draft was presented to the defendant in New York City for payment, and payment demanded and refused, and the same was duly protested; that thereafter the said draft was returned to the transferee from the plaintiff, who demanded from the said Gonzalez the sum of $4,181.60 in money of the United States of America, together with interest and protest fees; that when such demand was made one dollar of United States money was worth $90 of the money of the United States of Colombia, and that by reason of the refusal of the defendant to pay the said draft when it was presented the said Gonzalez was compelled to pay to the persons to whom he had indorsed and transferred said draft the sum of $4,204.86 in American currency, and was therefore compelled to pay and did pay therefor the sum of $376,344 of the money of the United States of Colombia; that by reason of the refusal of the defendant to pay the said draft when presented for payment the said Gonzalez was damaged, in addition to the face value of the draft and interest and protest fees mentioned, the sum of $1,579.72 in money of the United States; that on the 21st day of April, 1904, there was owing and due from the said defendant to the said Gonzalez the sum of $5,785.15, money of the United States of America, with interest thereon; that on the 21st day of April, 1904, the said Gonzalez sold and assigned to this plaintiff all of the claim, demand, and cause of action set forth in the complaint against the defendant, and all moneys due and to grow due thereon. It is further alleged that the defendant had paid to this plaintiff the sum of $4,859.31, which was received by the plaintiff in payment and satisfaction of the face of said draft, interest thereon, and protest fees,

under a written stipulation with the defendant that acceptance by the plaintiff of the said $4,859.31 would in no way affect, limit, or prejudice the plaintiff's right to recover from the defendant the balance of said sum of $5,785.18 and interest, amounting to $1,579.72. To this complaint the defendant demurred, upon the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was overruled at the Special Term.

The form of the draft is not set out in the complaint. It is alleged that the defendant, by its agents in the United States of Colombia, drew a draft on the defendant at its home office in the city of New York, requiring it to pay to Gonzalez $4,181.60. When that draft was presented in New York for payment and payment was refused, a cause of action arose in favor of Gonzalez against the defendant in the city of New York for the amount of the draft, interest, and protest fees. It is not alleged that Gonzalez paid defendant anything for the draft, or that defendant was under any obligation to pay the draft in Colombia. Its own agent gave Gonzalez a draft, by which it obligated itself to pay him a sum of money in New York. It became liable to pay him that sum of money here, and that liability has been satisfied by the defendant. The defendant made no contract in relation to the money of the United States of Colombia; made no agreement to pay to Gonzalez anything in the United States of Colombia. The only obligation that it assumed to Gonzalez was to pay in the city of New York a sum of money, which sum, with interest, it has paid. There is no allegation as to the consideration for this draft, and I cannot see that there is any presumption that the transaction involved anything more than to pay Gonzalez a sum of money. Section 200 of the Negotiable Instruments Law (chapter 612, p. 743, Laws 1897) provides that a negotiable instrument is discharged by payment in due course by or on behalf of the principal debtor, or by any other act which will discharge a simple contract for the payment of money.

The general principle that the damages for a failure to pay a sum of money is the interest on the sum at the legal rate at the place where the contract is to be performed is alleged by the plaintiff to be inapplicable to this case by reason of a rule of the law merchant that, in the case of dishonor of a foreign bill of exchange, the holder is entitled to recover, in addition to interest, exchange and re-exchange; but I do not think that this rule has any relation to this claim of the plaintiff. In the first place, assuming that by this rule of the law merchant, in the case of dishonor of a foreign bill of exchange, the holder is entitled to recover, in addition to interest, the cost of re-exchange, such cost would not in any way be measured by the fluctuation of an irredeemable paper currency in a foreign country. In 2 Daniel on Negotiable Instruments (section 1445) re-exchange is defined to be the amount for which a bill may be purchased in the country where the original bill is payable, drawn upon the drawer in the country where he resides, which will give the holder a sum exactly equal to the amount of the original bill at the time when it ought to be paid, or when he is able to draw the re-exchange bill, together with the expenses and interest. Assuming that, when the plaintiff's

correspondent in New York received this bill drawn on the defendant, and the bill was not paid, he was entitled to the cost of remitting the money from the United States back to the United States of Colombia, in addition to interest and expenses, there is no allegation that the money was remitted back to Colombia, and no allegation of the cost of such remittance. What Gonzalez was entitled to was $4,181.60 United States money in the United States of Colombia, and the cost of remitting that amount of money to Colombia would be the sum of money for which the drawer of the bill would be liable. The defendant was both the drawer and drawee of the bill. The failure of the drawee to pay imposed upon the drawer a liability to repay to the payee in Colombia the amount of the bill and interest, and the cost of re-exchange is the cost of remitting the money again to the place at which the bill was drawn. But this had no relation to the fluctuation of the currency of the United States of Colombia, as the bill was not payable in Colombian money, and was not sold for Colombian money by the defendant. The defendant would have fulfilled its obligation if, when payment was refused in New York, its agent in Colombia had tendered to Gonzalez a sum of money in gold coin of the United States; and, as there is no allegation or evidence that Gonzalez obtained re-exchange, or that he was put to any expense in consequence of remitting the money to the United States of Colombia, there was no allegation which justified a recovery of any re-exchange. What Gonzalez did with this bill in the United States of Colombia, either before or after its dishonor, was no concern of the defendant.

There is really nothing to show that plaintiff's assignee sustained any damage, for, assuming that the plaintiff would have been entitled to recover the difference caused by the fluctuation in the value of Colombian money, the defendant, I think, would be entitled to be credited with the amount that Gonzalez realized in Colombia for the sum of money that was finally paid. There is no allegation that when Gonzalez actually received this money he did not receive for it in money of the United States of Colombia more than he repaid to the banker to whom he had sold the bill; for it is apparent that, when he finally received the amount of the draft in Colombia, if he received as much in Colombia as he paid when the bill was dishonored, he sustained no damage in consequence of such dishonor. What he actually received in the United States of Colombia for the bill when he first sold it had no relation to the damage that he sustained by reason of the refusal of the defendant to pay it. His damage would be the difference between what he had to pay to the bankers to whom he had sold the bill when it was dishonored, and the amount that he actually received when the defendant paid its obligation.

What is meant by "exchange and re-exchange" is illustrated by sections 1444 and 1445 of 2 Daniel on Negotiable Instruments. The illustration is: A. purchased a bill of exchange in San Francisco, drawn on a house in New York, and pays therefor a premium; and, in the event of dishonor of the bill in New York, it is obvious that, if the holder could only recover of the drawer in California the $1,000 which he should have received in New York, he would lose the premium

which he paid for the exchange, and suffer without remedy the loss and inconvenience of returning the bill to California for recourse against the drawer. And even if no premium had been paid, the holder, entitled under the drawer's contract to receive the $1,000 in New York, would not be indemnified if he could only sue for·and obtain that amount in California. From these circumstances grew the customary right of the holder of the bill, by the law merchant, to draw a bill upon the drawer—literally a bill of exchange—for the principal amount which he should have received, increased by the cost of protest, and the sum which it will cost to replace that principal amount at the place where it should have been paid. This right to recover for re-exchange is therefore based upon the obligation to pay at the place where the bill was payable; and, if the holder of the bill ultimately receives what he was entitled to at the place where the bill was payable, with interest and the cost of the protest, he receives just what he was entitled to. The liability of the drawer of the bill to the payee at the place where the bill was issued has no application to this case. The purchaser of the bill did not sue in the United States of Colombia. He came to New York, where the bill was payable, and sued the drawer here, and has received here the money that was due and to which he was entitled, with interest and expenses. If Gonzalez had sought to recover in the United States of Colombia from the drawer of the bill the amount that he was there entitled to receive, he would have been entitled to recover the cost of transmitting the money from New York to Colombia; but he has recovered in New York the money that he was entitled to receive in New York, and he has therefore sustained no loss for re-exchange, and is not·entitled to recover its cost.

The judgment appealed from should be reversed, with costs, and the demurrer sustained, with costs, with leave to the plaintiff to amend the complaint within 20 days on payment of costs in this court and in the court below.

O'BRIEN, P. J., and McLAUGHLIN, J., concur. CLARKE and HOUGHTON, JJ., dissent.